

U.S. Department of Justice

Ronald C. Machen Jr.
United States Attorney

*District of Columbia*

_____

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

November 24, 2014

**FILED**

**JAN 2 8 2015**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**Submitted Ex Parte, Under Seal and In Camera**

The Honorable Emmet G. Sullivan
United States District Judge
United States District Court for the
District of Columbia

Re:   United States v. Juan Floyd, et al.
        Criminal No. 13-305 (EGS)

Dear Judge Sullivan:

Pursuant to the Court's Order, issued orally during the ex parte, under seal hearing on November 24, 2014, in the above-captioned matter, regarding the government's disclosure obligations in connection with the criminal investigation of FBI Special Agent Matthew A. Lowry, the United States Attorney's Office for the District of Columbia ("USAO-DC") hereby submits this letter and its attachments for the Court's ex parte, under seal, and in camera review. As the Court is aware, the United States Attorney's Office for the Eastern District of Pennsylvania ("USAO-EDPA"), in conjunction with the Department of Justice's Office of the Inspector General ("DOJ-OIG"), is conducting the criminal investigation into Agent Lowry's alleged misconduct. The USAO-DC is recused from that investigation.

1

Attached please find the following:

1.      An FBI document entitled "Washington Field Office Special Review; Evidence

Handling & Storage; Drugs, Firearms & Valuables; Executive Summary." a copy

of which was tendered to the Court at this morning's hearing (FBI_HQ1 to

FBI_HQ2);

2.      An FBI document entitled "Inspection Division External Audit and Compliance

Section; Compliance and Mitigation Unite Report; Evidence Special: An Audit of

Sentinel Entries for Firearms, Valuables, and Drugs." received by the USAO-DC

after this morning's hearing (FBI_HQ3 to FBI_ HQ47).

Sincerely,

Karla-Dee Clark (D.C. Bar No. 435-782)
Todd Gee (D.C. Bar No. 495-001)
Assistant United States Attorneys
555 4th Street, NW, 4th Floor
Washington, D.C.  20530
(202) 252-7740 (Clark)
(202) 252-7224 (Gee)
Karla-Dee.Clark@usdoj.gov
Todd.Gee@usdoj.gov

2

UNCLASSIFIED // FOR OFFICAL USE ONLY



**WASHINGTON FIELD OFFICE
SPECIAL REVIEW
EVIDENCE HANDLING & STORAGE
DRUGS, FIREARMS & VALUABLES
EXECUTIVE SUMMARY**



Name: **Inspector-in-Charge R. Justin Tolomeo**
Subject: **Washington Field Office, Special Review
Evidence Handling and Storage
Period: 03/18/1983 – 11/01/2014**

(U//FOUO) **Overview:** At the request of FBI Executive Management (EM), the Inspection Division (INSD) will conduct a review of the Washington Field Office's (WFO) handling of drug, firearms, and valuable evidence. The INSD mission is to ensure compliance and facilitate the improvement of performance by providing independent, evaluative oversight of all FBI investigative and administrative operations. INSD works closely with the Office of the Inspector General (OIG) and an OIG Agent is assigned to INSD. The division is comprised of four sections: the Office of Inspections (OI), Internal Investigations Section (IIS), External Audit and Compliance Section (EACS), and the Strategic Analysis Section (SAS). The OI is lead by the Chief Inspector, who provides guidance and direction to seven SES Inspectors. The OI conducts inspections of FBI field offices, headquarters entities, and Legats, to assess the effectiveness of operations, leadership, and intelligence. INSD also conducts national program reviews and other "special reviews" at the request of FBI EM. Additionally, the OI oversees all shooting investigations for both accidental and intentional discharges. This review will be conducted by the OI, in coordination with IIS and EACS.

(U//FOUO) **Purpose and Scope:** The purpose of the review is to assess the integrity of the WFO's drug, firearms and valuable evidence by evaluating the means by which it was handled, processed and stored. As of 04/08/2014, there were 8052 drug, 3250 firearms, and 2536 valuable items on-hand, stored at WFO's Evidence Control Centers (ECC) at the Headquarters City office and the Northern Virginia Resident Agency (NVRA), as well as off-sites to include the Cross Border Task Force (CBTF). INSD will utilize the date of the oldest drug exhibit in storage, 03/18/1983, to 11/01/2014 as the period of review. INSD will examine each evidentiary item and make an assessment of its care, custody, control and condition. INSD will also assess the sufficiency of the existing Evidence Policy Guide and propose policy revisions to ensure the integrity of FBI evidence control. Additionally, the review will assess the FBI's current Drug Evidence Destruction Policy (Attachment A), to ensure the strength of its protocols.

(U//FOUO) The effort will be overseen by an Inspector in Charge (IIC) with a staff of one Inspector in Place (IIP), a field office ASAC; two Assistant Inspector Team Leaders (TLs) , TDY SSAs to INSD; 20 Assistant Inspectors in Place (AIIPs), field office SSAs; and 10 Evidence Control Technicians (ECTs). INSD will initiate the review and examination on 11/20/2014, by first conducting a three day assessment of logistical and administrative needs and requirements, followed by a two phase on-site review and examination of each item. Each phase will last a week. The first phase will review the 8052 drug exhibits. The second will address the 3250 firearms, and 2536 valuable items.

(U//FOUO) **Background:** In early 2014, the Laboratory Division (LD) conducted a 100% manual review of all valuable, firearms and drug evidence to verify and correct discrepancies resulting from the merge of the

UNCLASSIFIED // FOR OFFICIAL USE ONLY

UNCLASSIFIED // FOR OFFICAL USE ONLY

FBI's former system of record, the Automated Case System (ACS) with Sentinel, the FBI's current system of record. This review, referred to as the "cleanse," was conducted to ensure any technical errors were addressed, and the FBI's evidence record keeping system was accurate. KPMG annually conducts a financial audit of the FBI high value evidence; however, due to the technical problems resulting from the merge of the two record keeping systems, KPMG allowed the FBI to address the technical issues. FBI EM directed INSD to conduct an audit of the cleanse, to ensure any discrepancies were identified and addressed. The INSD audit was conducted in all 56 field offices and was led by EACS. Two-person AIIP teams were required to receive training, and INSD provided each team with a laptop containing pre-populated data for the respective field office. The AIIPs were directed to: 1) confirm the location of items; 2) determine if the Sentinel entries with regard to the evidence were accurate; and 3) determine if the Sentinel entries met compliance standards. The review did not assess care, custody, control or condition of the items. INSD prepared a report of the audit with observations and recommendations for improvement. (Attachment B).

FBI_HQ-00002

UNCLASSIFIED//FOR OFFICIAL USE ONLY

**INSPECTION DIVISION**
**EXTERNAL AUDIT AND COMPLIANCE SECTION**



COMPLIANCE AND MITIGATION UNIT REPORT

EVIDENCE SPECIAL: AN AUDIT OF SENTINEL ENTRIES
FOR FIREARMS, VALUABLES, AND DRUGS



Nancy McNamara
Assistant Director
Inspection Division

UNCLASSIFIED//FOR OFFICIAL USE ONLY

UNCLASSIFIED//FOR OFFICIAL USE ONLY

TABLE OF CONTENTS

# Contents

I.    (U) EXECUTIVE SUMMARY _____ 2

II.   (U) SCOPE AND METHODOLOGY_____ 4

III.  (U) COMPLIANCE AREAS AND ERRORS _____ 6

IV.   (U) ITEMS UNAVAILABLE TO AUDIT _____ 16

V.    (U) CATS ID NUMBERS AND FBI SEIZURE NUMBERS _____ 17

VI.   (U) ADDITIONAL COMPLIANCE CONCERNS _____ 18

VII.  (U) CONCLUSION_____ 20

VIII. (U) OBSERVATIONS AND RECOMMENDATIONS _____ 21

IX.   (U) LIST OF ATTACHMENTS _____ 34

Attachment A:  Inspection Staffing Roster

Attachment B:  Abbreviations

Attachment C:  Audit Questions

FBI_HQ-00004

UNCLASSIFIED//FOR OFFICIAL USE ONLY

## I.    (U) EXECUTIVE SUMMARY

(U)  Following the deployment of Sentinel in July 2012, the FBI Laboratory Division (Lab) identified significant discrepancies in the electronic records of evidence pertaining to firearms, valuables, and drugs.  In order to ensure accurate reporting of these entries, the Lab provided all field offices a two month period (2/10/14 – 4/8/14) to update and verify each Sentinel entry for all firearms, valuables, and drug evidence.  Inspection Division (INSD) was to follow with an audit to assess the effectiveness of these efforts.

(U)  The Evidence Audit had two primary objectives.  First, a verification of all Sentinel entries for firearms, valuables, and drug evidence at each FBI field office as of 1/31/2014.  Second, a 100% review of any Consolidated Assets Tracking System (CATS) IDs or FBI Seizure Numbers associated with these evidence items.

(U)  Following consultation with the Lab, 32 areas of field evidence compliance were selected to audit, to include, initially, if the auditor could locate the item to audit.  Upon locating, AIIPs examined: a) Evidence Item (Case ID, 1B Number, Holding Office, Barcode, Description, Collected On Date/Time, CATS ID Number, FBI Seizure Number, and Evidence Type); b) Valuables (Type, Checks, Cash, Dye Pack, Dollar Value, Valuation Method, and Appraisal); c) Drugs (Analysis Date, Lab Confirmation, Confirmation Type, Sample Size, Confirmed Weight, and Confirmed Units); and d) Firearms (Type -Weapon or Other, Make, Model, Serial, Rendered Safe, Rendered Safe by PFI, Silencer, Firearm/Ammunition packaged together, and multiple firearms packaged together).

(U)  A total of 41,631 Sentinel entries of firearms, valuables, and drug evidence were audited for compliance with 18,624 (45%) total items identified with errors, many with multiple errors.  Nine thousand seven hundred sixty six (9,765/66%) compliance errors were associated with drug evidence; 4,695 (33%) were associated with firearms evidence; and 4,164 (34%) involved valuable evidence.  The drug error rate was significantly higher than the firearms and valuables due to a Sentinel functionality flaw.[1]  When the flawed Sentinel drug entries were removed from the drug calculation, the drug error rate dropped to 37%.

(U)  As a result of the audit, the FBI's total reportable values were determined to be as follows: 1) valuable dollar figure decreased by $1,413,862.17; 2) confirmed true drug weight increased by 1,935.47 kilograms; and 3) number of weapons increased by 20.[2]

(U)  A total of 1,729 (4%) of the 41,631 randomly selected items were unavailable for audit due to: 1) an inability to locate the item (32/2%); 2) charged out to another agency/ department (818/47%); 3) disposed of yet not removed from Sentinel (802/46%); and 4) Ghost

---

[1] Sentinel automatically pre-populates all drug entries as "unconfirmed" resulting in each drug entry having to be adjusted if the drug item had not yet been sent to a Lab for testing.

[2] The valuable dollar figure decreased most significantly by one check, written in the amount of $1,246,089.12 yet not made payable to FBI or USMS and erroneously carried for its value in Sentinel. Drug weight was most impacted by errors in previously carried "unconfirmed" drug weight to "confirmed true" drug weight. Total weapons increased by 20 when 39 weapons were mislabeled as other and 19 other were mislabeled as weapons.

FBI_HQ-00005

items – initial 1B evidentiary item was split into two or more new 1Bs although the original 1B remained empty within Sentinel (77/5%).

(U)  A total of 1,342 selected sampled items were initially identified with CATS IDs or FBI Seizure Numbers.  During the audit, INSD identified an additional 75 selected items that had CATS IDs/Seizure Numbers associated with them yet these numbers were not entered into Sentinel for a grand total of 1,417 audited items that required CATS IDs/Seizure Numbers.  Of these 1,417 items, 181 (12.7%) had compliance errors predominantly with either a lack of a CATS ID and Seizure Number (75/41.4%) or an incorrect CATS ID and/or FBI Seizure Number (95/52.5%).  The remaining 11 errors resulted when an item inappropriately possessed a CATS ID/Seizure Number (7) or lacked a CATS ID or Seizure Number (4).

3

UNCLASSIFIED//FOR OFFICIAL USE ONLY

## II.    (U) SCOPE AND METHODOLOGY

### A. (U) Identification of Firearms, Valuables, and Drug Evidence

(U)  INSD audited a total of 41,631 Sentinel entries of firearms (14,419), valuables (12,382), and drug (14,830) evidence across all 56 field offices.  For each field office, a representative sampling of its firearms, valuables, and drug evidence was randomly selected from its total firearm, valuables, and drug evidence to provide INSD a 95% confidence level with a 5% level of precision[3].  The exact breakdown per office is depicted in the chart below:

**Table 1: Firearms, Valuables, and Drugs Audited**

| Field Office | Firearms | Valuables | Drugs | Total |
|---|---|---|---|---|
| Albany | 210 | 113 | 190 | 513 |
| Albuquerque | 249 | 221 | 293 | 763 |
| Anchorage | 246 | 147 | 263 | 656 |
| Atlanta | 319 | 259 | 249 | 827 |
| Baltimore | 302 | 290 | 296 | 888 |
| Birmingham | 122 | 256 | 203 | 581 |
| Boston | 273 | 280 | 339 | 892 |
| Buffalo | 243 | 214 | 291 | 748 |
| Charlotte | 236 | 206 | 192 | 634 |
| Chicago | 340 | 317 | 357 | 1014 |
| Cincinnati | 233 | 218 | 172 | 623 |
| Cleveland | 276 | 235 | 301 | 812 |
| Columbia | 242 | 153 | 271 | 666 |
| Dallas | 310 | 265 | 309 | 884 |
| Denver | 216 | 179 | 175 | 570 |
| Detroit | 327 | 287 | 342 | 956 |
| El Paso | 198 | 171 | 240 | 609 |
| Honolulu | 194 | 237 | 273 | 704 |
| Houston | 242 | 191 | 250 | 683 |
| Indianapolis | 321 | 272 | 336 | 929 |
| Jackson | 119 | 80 | 128 | 327 |
| Jacksonville | 202 | 142 | 176 | 520 |
| Kansas City | 241 | 244 | 289 | 774 |
| Knoxville | 195 | 126 | 253 | 574 |

---

[3] The "level of precision" is known as the "margin of error."  The margin of error shows how closely a sample size will predict results of an entire population.  Standard statistical practice is 95%.

4

UNCLASSIFIED//FOR OFFICIAL USE ONLY

| Field Office | Firearms | Valuables | Drugs | Total |
|---|---|---|---|---|
| Los Angeles | 346 | 326 | 352 | 1024 |
| Little Rock | 256 | 92 | 113 | 461 |
| Louisville | 152 | 112 | 200 | 464 |
| Las Vegas | 264 | 231 | 266 | 761 |
| Memphis | 243 | 189 | 217 | 649 |
| Miami | 309 | 319 | 322 | 950 |
| Milwaukee | 221 | 189 | 272 | 682 |
| Minneapolis | 240 | 240 | 281 | 761 |
| Mobile | 198 | 91 | 195 | 484 |
| New Haven | 307 | 222 | 303 | 832 |
| New Orleans | 260 | 220 | 312 | 792 |
| New York | 354 | 352 | 354 | 1060 |
| Newark | 318 | 331 | 346 | 995 |
| Norfolk | 260 | 220 | 312 | 792 |
| Oklahoma City | 258 | 184 | 146 | 588 |
| Omaha | 163 | 140 | 178 | 481 |
| Philadelphia | 320 | 291 | 336 | 947 |
| Phoenix | 318 | 271 | 276 | 865 |
| Pittsburgh | 330 | 225 | 312 | 867 |
| Portland | 243 | 312 | 250 | 805 |
| Richmond | 224 | 142 | 204 | 570 |
| Sacramento | 257 | 223 | 268 | 748 |
| Salt Lake City | 278 | 190 | 331 | 799 |
| San Antonio | 306 | 226 | 274 | 806 |
| San Diego | 252 | 275 | 322 | 849 |
| San Francisco | 335 | 297 | 346 | 978 |
| San Juan | 336 | 266 | 329 | 931 |
| Seattle | 342 | 250 | 298 | 890 |
| Springfield | 230 | 203 | 232 | 665 |
| St Louis | 174 | 114 | 262 | 550 |
| Tampa | 270 | 269 | 220 | 759 |
| Washington Field | 343 | 333 | 367 | 1043 |
| Total | 14419 | 12382 | 14830 | 41631 |

FBI_HQ-00008

UNCLASSIFIED//FOR OFFICIAL USE ONLY

### B. (U) Methodology

(U) From 04/22/2014 – 05/02/2014, a team of 182 AIIPs from each of the 56 field offices and FBIHQ conducted the audit. The AIIPs were assisted by five INSD Team Leaders, six MAPAs, and one Unit Chief located at FBIHQ. A Group Sharepoint site, personally manned call center, and two e-mail address sites (both high and low sides) were established to ensure a continuous flow of communication across all AIIPs. In addition, all AIIPs received training via SVTC on INSD's audit application and field evidence unit policies related to firearms, valuables, and drugs prior to the audit beginning. INSD's audit application was automatically pre-populated with Sentinel data for each of the selected items. INSD AIIPs sought verification of the Sentinel data based upon "physical observation" of each item at the field offices. If an error was identified in the Sentinel entry, the AIIP made a "change" in the audit application to indicate what should have been the correct entry in Sentinel.

### III.   (U) COMPLIANCE AREAS AND ERRORS

(U) Thirty two (32) areas of field evidence compliance were selected to audit, to include, initially, if the auditor could locate the item to audit. Upon locating, AIIPs examined: a) Evidence Item (Case ID, 1B Number, Holding Office, Barcode, Description, Collected On Date, CATS ID Number, FBI Seizure Number, and Evidence Type); b) Valuables (Type, Checks, Cash, Dye Pack, Dollar Value, Valuation Method, and Appraisal); c) Drugs (Analysis Date, Lab Confirmation, Confirmation Type, Sample Size, Confirmed Weight, and Confirmed Units); and d) Firearms (Type -Weapon or Other, Make, Model, Serial, Rendered Safe, Rendered Safe by PFI, Silencer, Firearm/Ammunition packaged together, and multiple firearms packaged together).

(U) A total of 41,631 Sentinel entries of firearms, valuables, and drug evidence were audited for compliance with 18,624 (45%) total items identified with errors, many with multiple errors. Nine thousand seven hundred sixty five (9,765/66%) compliance errors were associated with drug evidence; 4,695 (33%) were associated with firearms evidence; and 4,164 (34%) involved valuable evidence. The drug error rate was significantly higher than the firearms and valuables due to a Sentinel functionality flaw. When the flawed Sentinel drug entries are removed from the drug calculation, the drug error rate dropped to 37%.

(U) A total of 1,729 (4%) of the 41,631 randomly selected items were unavailable for audit due to: 1) an inability to locate the item (32/2%); 2) charged out to another agency/department (818/47%); 3) disposed of yet not removed from Sentinel (802/46%); and 4) determined to be a Ghost item – initial 1B evidentiary item was split into two or more new 1Bs although the original 1B remained empty within Sentinel (77/5%).

### A. (U) Field Evidence Management and Operations

(U//FOUO) The Field Evidence Management and Operations Policy Implementation Guide (FEMO PG) (dated 10/27/2009, 0120PG), Section 2 assigned "Roles and Functional Responsibilities" of all field evidence compliance to field office division heads. Specifically, at Section 2.1, it stated, "All field office ADICs and SACs, or individuals designated by the

FBI_HQ-00009

UNCLASSIFIED//FOR OFFICIAL USE ONLY

division, are responsible for ensuring compliance with all matters identified by this policy." The FEMO PG goes on to describe the responsibilities of the designated Field Office Program Manager (FOPM) and Evidence Control Technician (ECT) and Alternate ECT.

(U//FOUO) Despite the day-to-day evidence responsibilities being assigned to each ADIC/SAC, or designees, the FBI Lab maintained program management for all FBI Field Evidence matters. Throughout the audit, INSD found varying levels of understanding at the FOPM and ECT levels with respect to the Lab's guidance. To ensure strict compliance, significant attention to detail is needed, especially with the transition to Sentinel. This was evident as the AIIPs reviewed the sampled items for potential noncompliance.

     i. (U) Analysis:

(U//FOUO) In addition to the existing evidence guidance within the FEMO PG, the Lab provided Evidence Management Operations Guidance to All Field Offices with specific instructions on verifying the accuracy of the Sentinel record for firearms, valuables, and drug evidentiary items via EC dated 2/10/2014, entitled *Field Evidence Review*, just before the Lab two month review period. This included details on properly entering various aspects of each evidentiary item into Sentinel. INSD identified deficiencies in the application of this guidance, particularly for drugs and firearms, as follows:

### B. (U) Drug Guidance/Error Rates

(U//FOUO) As noted above, INSD sought verification of Drugs as it pertained to Sentinel entries for Drug Analysis Date, Lab Confirmation, Confirmation Type, Sample Size, Confirmed Weight, and Confirmed Units.

(U//FOUO) The FEMO PG, Section 4.9.14 stated, "When drugs are returned from the DEA Laboratory, the ECT is responsible for making appropriate modifications in the collected item database. When drugs come back confirmed, 'Drug Type' and 'Drug Confirmed' fields must be modified as such in the collected item database. The 'approximate gross weight' of the 'total package' drug weight in the 'Drug Weight' field must be changed to show the official DEA laboratory-determined 'total package weight.' To document all weights, the 'Description' field of the collected item database must then be modified as follows: 'Original approximate gross weight of the total package before analysis was ____.' 'DEA confirmed weight after analysis is ____.'"

(U//FOUO) INSD identified several areas pertaining to drug evidence that were not appropriately updated within Sentinel. For instance, the "Drug Lab Confirmation" field was corrected by the AIIPs 2,095 times; 320 times from "Unconfirmed" to "Confirmed True"; and 98 times from "Confirmed False to "Blank," indicating no report had been received. Likewise, the "Lab Confirmed Weight" field was corrected 1,973 times.

(U//FOUO) In part, these errors were likely due to the timing of the guidance from the Lab. Specifically, although follow-on guidance by the Lab via EC existed, INSD determined this information had not transitioned to the ECTs within the field offices to be consistently

FBI_HQ-00010

UNCLASSIFIED//FOR OFFICIAL USE ONLY

implemented. This was evident based upon the overall Bureau drug error rates identified. INSD sampled 14,830 drug items, of which 9,765 (66%) drug items had errors with 18,776 total errors identified therein. The table below outlines the Drug Error Rates per field office, with the errors attributed to the Sentinel "pre-population" flaw omitted:

### Table 2: Drug Error Rates

| Field Office | Items Sampled | Items With Errors | Error Rate | Total Errors Identified |
|---|---|---|---|---|
| Albany | 190 | 6 | 3.16% | 193 |
| Albuquerque | 293 | 105 | 35.84% | 330 |
| Anchorage | 263 | 11 | 4.18% | 160 |
| Atlanta | 249 | 44 | 17.67% | 214 |
| Baltimore | 296 | 65 | 21.96% | 285 |
| Birmingham | 203 | 15 | 7.39% | 115 |
| Boston | 339 | 265 | 78.17% | 499 |
| Buffalo | 291 | 68 | 23.37% | 373 |
| Charlotte | 192 | 103 | 53.65% | 306 |
| Chicago | 357 | 292 | 81.79% | 527 |
| Cincinnati | 172 | 6 | 3.49% | 17 |
| Cleveland | 301 | 22 | 7.31% | 206 |
| Columbia | 271 | 30 | 11.07% | 274 |
| Dallas | 309 | 99 | 32.04% | 193 |
| Denver | 175 | 11 | 6.29% | 157 |
| Detroit | 342 | 68 | 19.88% | 396 |
| El Paso | 240 | 30 | 12.50% | 169 |
| Honolulu | 273 | 237 | 86.81% | 574 |
| Houston | 250 | 190 | 76.00% | 563 |
| Indianapolis | 336 | 205 | 61.01% | 459 |
| Jackson | 128 | 28 | 21.88% | 132 |
| Jacksonville | 176 | 11 | 6.25% | 251 |
| Kansas City | 289 | 238 | 82.35% | 647 |
| Knoxville | 253 | 107 | 42.29% | 412 |
| Las Vegas | 266 | 184 | 69.17% | 428 |
| Little Rock | 113 | 91 | 80.53% | 250 |
| Los Angeles | 352 | 35 | 9.94% | 143 |
| Louisville | 200 | 127 | 63.50% | 513 |
| Memphis | 217 | 80 | 36.87% | 249 |
| Miami | 322 | 96 | 29.81% | 664 |
| Milwaukee | 272 | 239 | 87.87% | 707 |

FBI_HQ-00011

UNCLASSIFIED//FOR OFFICIAL USE ONLY

| Field Office | Items Sampled | Items With Errors | Error Rate | Total Errors Identified |
|---|---|---|---|---|
| Minneapolis | 281 | 253 | 90.04% | 874 |
| Mobile | 195 | 8 | 4.10% | 144 |
| New Haven | 303 | 16 | 5.28% | 250 |
| New Orleans | 312 | 35 | 11.22% | 225 |
| New York | 354 | 50 | 14.12% | 271 |
| Newark | 346 | 148 | 42.77% | 396 |
| Norfolk | 158 | 59 | 37.34% | 245 |
| Oklahoma City | 146 | 0 | 0.00% | 102 |
| Omaha | 178 | 44 | 24.72% | 221 |
| Philadelphia | 336 | 241 | 71.73% | 656 |
| Phoenix | 276 | 42 | 15.22% | 288 |
| Pittsburgh | 312 | 146 | 46.79% | 690 |
| Portland | 250 | 5 | 2.00% | 49 |
| Richmond | 204 | 175 | 85.78% | 435 |
| Sacramento | 268 | 29 | 10.82% | 89 |
| Salt Lake City | 331 | 212 | 64.05% | 580 |
| San Antonio | 274 | 126 | 45.99% | 488 |
| San Diego | 322 | 43 | 13.35% | 193 |
| San Francisco | 346 | 38 | 10.98% | 205 |
| San Juan | 329 | 152 | 46.20% | 350 |
| Seattle | 298 | 23 | 7.72% | 173 |
| Springfield | 232 | 65 | 28.02% | 198 |
| St Louis | 262 | 66 | 25.19% | 224 |
| Tampa | 220 | 84 | 38.18% | 171 |
| Washington Field | 367 | 330 | 89.92% | 853 |

(U//FOUO) INSD also determined the field offices lacked the required documentation within Sentinel. The FEMO PG, Section 4.9.14 stated, "When the evidence is returned, the ECT is to record chain-of-custody on the automated FD-192 maintained with the evidence and in the collected item database." In addition, the Lab's February 2014 EC reiterated the policy "When drugs are returned from a drug laboratory, the drug report information must be used to "Update" the "Drug Evidence Information" record…Drug laboratory reports must be imported into the Sentinel case file, a copy must be provided to the ECT to update the system, and a copy must be maintained in the Drug Evidence binder."

(U//FOUO) Throughout the audit, the AHPs could not readily confirm the drug evidence information detailed in Sentinel because the evidence lacked the required DEA Form 7 and/or an updated chain-of-custody.

FBI_HQ-00012

UNCLASSIFIED//FOR OFFICIAL USE ONLY

### C. (U)  Firearms Guidance/Error Rates

(U//FOUO)  INSD sought verification of Sentinel records for the Type of Firearm - Weapon or Other, Make, Model, Serial, Rendered Safe, Rendered Safe by PFI, Silencer, Firearm/Ammunition packaged together, and multiple firearms packaged together.

(U//FOUO)  The FEMO PG Section 4.8. Firearms Evidence provided, "In all instances, each weapon and or accessory must receive its own 1B and barcode number." This guidance was reiterated in the Lab's EC dated 02/11/2014, stating "each item receives its own 1B number and barcode." Despite this guidance, INSD AIIPs found many instances in which multiple "firearms/weapons" were stored together at a field office under the same 1B number yet bore separate and distinct barcodes. Upon consultation with the Lab PM on this issue during the actual audit, INSD was advised to accept this packaging as appropriate so long as each "weapon" had a separate barcode.

(U//FOUO)  In addition, FEMO PG, Section 4.8 provided the definition of a "firearm/weapon" and "firearm/other," stating:

> A firearm/weapon is defined as an assemble of a barrel and action from which a projectile(s) is propelled by the products of combustion, real or inoperable...Silencers are to be classified and stored as firearms and categorized and entered into the FBI's central recordkeeping system/collected items as firearms/weapons.
>
> A firearm/other is to include all accessories, parts, ammunition and associated items, including but not limited to:  sites, holsters, bayonets, cases, scopes... flashlights/laser sighting devices that are designed or meant to be used in conjunction with a firearm...

(U//FOUO)  Despite this guidance, INSD AIIPs identified multiple instances in which silencers were entered into Sentinel as "firearm/other" instead of "firearm/weapon." INSD AIIPs changed the firearm type from "Other" to "Weapon" 38 times; while changes from "Weapon" to "Other" occurred 18 times. INSD identified many instances in which scopes, laser sights, and a bayonet were classified incorrectly as "firearm/weapon."

(U//FOUO)  In addition, the FEMO PG and Lab EC provided the following guidance in regards to firearms being "Rendered Safe:"

> Firearms are not to be accepted by the ECT for storage until they have been examined by a field office firearms instructor (if a field office does not have a firearms instructor, a Special Weapons and Tactics [SWAT] member may be used) and rendered safe.
>
> The firearms instructor is to certify the examination by:
>
> • Signing his/her name.

10

UNCLASSIFIED//FOR OFFICIAL USE ONLY

- Placing the date that the weapon was examined and rendered safe in the lower portion of the chain-of-custody page of the package copy of the automated FD-192.
- Chain-of-custody information is not to be recorded if possession of the firearm does not change during the safety examination. Once rendered safe, firearms may be stored in a secured cabinet or on open shelving within the ECR.

(U//FOUO)  INSD AIIPs encountered no discernible Lab policy or guidance which required the placement of any visible markings on a firearm to indicate the firearm was "rendered safe." This became apparent when multiple AIIPs initially identified weapons as not "rendered safe," due to what they believed was the lack of any visible marking on the actual firearm, to include possibly a zip-tie, plug, or sticker, to indicate the firearm was "rendered safe." In the absence of such visible indicators, INSD AIIPs nor anyone else handling the evidence knew if the firearm was still loaded and/or capable of firing if not handled appropriately. The FEMO PG is silent on the exact requirements to "render a firearm safe," other than the requirements cited above. For safety reasons, a visible marking should be included in addition to the current requirements for firearms/weapons before acceptance by the ECT for storage.

(U//FOUO)  INSD's Evidence Audit resulted in 14,419 firearms items reviewed, of which 4,695 (33%) firearm items had errors with 5,881 specific errors identified therein. The table below outlines the Firearm Error Rates per field office:

### Table 3: Firearm Error Rates

| Field Office | Items Sampled | Items With Errors | Error Rate | Total Errors Identified |
|---|---|---|---|---|
| Albany | 210 | 18 | 8.57% | 22 |
| Albuquerque | 249 | 147 | 59.04% | 151 |
| Anchorage | 246 | 36 | 14.63% | 50 |
| Atlanta | 319 | 46 | 14.42% | 84 |
| Baltimore | 302 | 30 | 9.93% | 39 |
| Birmingham | 122 | 81 | 66.39% | 89 |
| Boston | 273 | 143 | 52.38% | 185 |
| Buffalo | 243 | 14 | 5.76% | 14 |
| Charlotte | 236 | 156 | 66.10% | 174 |
| Chicago | 340 | 212 | 62.35% | 286 |
| Cincinnati | 233 | 15 | 6.44% | 25 |
| Cleveland | 276 | 19 | 6.88% | 25 |
| Columbia | 242 | 7 | 2.89% | 11 |
| Dallas | 310 | 26 | 8.39% | 40 |
| Denver | 216 | 20 | 9.26% | 23 |
| Detroit | 327 | 189 | 57.80% | 224 |
| El Paso | 198 | 11 | 5.56% | 11 |

FBI_HQ-00014

UNCLASSIFIED//FOR OFFICIAL USE ONLY

| Field Office | Items Sampled | Items With Errors | Error Rate | Total Errors Identified |
|---|---|---|---|---|
| Honolulu | 194 | 148 | 76.29% | 197 |
| Houston | 242 | 72 | 29.75% | 77 |
| Indianapolis | 321 | 96 | 29.91% | 101 |
| Jackson | 119 | 29 | 24.37% | 36 |
| Jacksonville | 202 | 32 | 15.84% | 56 |
| Kansas City | 241 | 217 | 90.04% | 242 |
| Knoxville | 195 | 20 | 10.26% | 24 |
| Las Vegas | 264 | 205 | 77.65% | 215 |
| Little Rock | 256 | 75 | 29.30% | 78 |
| Los Angeles | 346 | 13 | 3.76% | 13 |
| Louisville | 152 | 93 | 61.18% | 113 |
| Memphis | 243 | 135 | 55.56% | 169 |
| Miami | 309 | 32 | 10.36% | 51 |
| Milwaukee | 221 | 213 | 96.38% | 313 |
| Minneapolis | 240 | 188 | 78.33% | 227 |
| Mobile | 198 | 25 | 12.63% | 25 |
| New Haven | 307 | 8 | 2.61% | 12 |
| New Orleans | 260 | 39 | 15.00% | 52 |
| New York | 354 | 51 | 14.41% | 65 |
| Newark | 318 | 232 | 72.96% | 260 |
| Norfolk | 116 | 16 | 13.79% | 24 |
| Oklahoma City | 258 | 42 | 16.28% | 48 |
| Omaha | 163 | 17 | 10.43% | 17 |
| Philadelphia | 320 | 268 | 83.75% | 350 |
| Phoenix | 318 | 35 | 11.01% | 47 |
| Pittsburgh | 330 | 156 | 47.27% | 226 |
| Portland | 243 | 14 | 5.76% | 20 |
| Richmond | 224 | 189 | 84.38% | 250 |
| Sacramento | 257 | 9 | 3.50% | 9 |
| Salt Lake City | 278 | 100 | 35.97% | 108 |
| San Antonio | 306 | 168 | 54.90% | 215 |
| San Diego | 252 | 13 | 5.16% | 13 |
| San Francisco | 335 | 68 | 20.30% | 152 |
| San Juan | 336 | 115 | 34.23% | 126 |
| Seattle | 342 | 39 | 11.40% | 52 |
| Springfield | 230 | 10 | 4.35% | 13 |
| St Louis | 174 | 41 | 23.56% | 66 |
| Tampa | 270 | 44 | 16.30% | 62 |

12

UNCLASSIFIED//FOR OFFICIAL USE ONLY

| Field Office | Items Sampled | Items With Errors | Error Rate | Total Errors Identified |
|---|---|---|---|---|
| Washington Field | 343 | 258 | 75.22% | 304 |

### D. (U)  Valuables Guidance/Error Rates

(U//FOUO)  INSD sought verification of Sentinel records for Valuables as it pertained to the Type, Checks, Cash, Dye Pack, Dollar Value, Valuation Method, and Appraisal.  Various aspects were examined for "Type" to include, if the item was an Art/Antique, Evidence Purchase Money, Jewelry, Negotiable, or Other.

(U//FOUO)  INSD's Evidence Audit resulted in 12,382 valuable items reviewed, of which 4,164 (34%) valuable items had errors with 5,460 specific errors identified therein.  The table below outlines the Valuable Error Rates per field office:

Table 4:  Valuables Error Rates

| Field Office | Items Sampled | Items With Errors | Error Rate | Total Errors Identified |
|---|---|---|---|---|
| Albany | 113 | 22 | 19.47% | 56 |
| Albuquerque | 221 | 23 | 10.41% | 25 |
| Anchorage | 147 | 4 | 2.72% | 4 |
| Atlanta | 259 | 20 | 7.72% | 26 |
| Baltimore | 290 | 31 | 10.69% | 56 |
| Birmingham | 256 | 58 | 22.66% | 99 |
| Boston | 280 | 224 | 80.00% | 389 |
| Buffalo | 214 | 15 | 7.01% | 21 |
| Charlotte | 206 | 66 | 32.04% | 142 |
| Chicago | 317 | 209 | 65.93% | 269 |
| Cincinnati | 218 | 16 | 7.34% | 22 |
| Cleveland | 235 | 18 | 7.66% | 25 |
| Columbia | 153 | 8 | 5.23% | 10 |
| Dallas | 265 | 34 | 12.83% | 42 |
| Denver | 179 | 27 | 15.08% | 41 |
| Detroit | 287 | 232 | 80.84% | 335 |
| El Paso | 171 | 11 | 6.43% | 13 |
| Honolulu | 237 | 197 | 83.12% | 303 |
| Houston | 191 | 114 | 59.69% | 147 |
| Indianapolis | 272 | 11 | 4.04% | 12 |
| Jackson | 80 | 9 | 11.25% | 15 |

13

FBI_HQ-00016

UNCLASSIFIED//FOR OFFICIAL USE ONLY

| Field Office | Items Sampled | Items With Errors | Error Rate | Total Errors Identified |
|---|---|---|---|---|
| Jacksonville | 142 | 7 | 4.93% | 11 |
| Kansas City | 244 | 212 | 86.89% | 222 |
| Knoxville | 126 | 16 | 12.70% | 18 |
| Las Vegas | 231 | 192 | 83.12% | 199 |
| Little Rock | 92 | 70 | 76.09% | 75 |
| Los Angeles | 326 | 44 | 13.50% | 46 |
| Louisville | 112 | 56 | 50.00% | 68 |
| Memphis | 189 | 119 | 62.96% | 148 |
| Miami | 319 | 42 | 13.17% | 68 |
| Milwaukee | 189 | 165 | 87.30% | 177 |
| Minneapolis | 240 | 205 | 85.42% | 244 |
| Mobile | 91 | 13 | 14.29% | 17 |
| New Haven | 222 | 16 | 7.21% | 23 |
| New Orleans | 220 | 19 | 8.64% | 26 |
| New York | 352 | 64 | 18.18% | 86 |
| Newark | 331 | 93 | 28.10% | 108 |
| Norfolk | 154 | 41 | 26.62% | 52 |
| Oklahoma City | 184 | 18 | 9.78% | 18 |
| Omaha | 140 | 49 | 35.00% | 54 |
| Philadelphia | 291 | 205 | 70.45% | 254 |
| Phoenix | 271 | 43 | 15.87% | 51 |
| Pittsburgh | 225 | 172 | 76.44% | 203 |
| Portland | 312 | 10 | 3.21% | 10 |
| Richmond | 142 | 113 | 79.58% | 127 |
| Sacramento | 223 | 3 | 1.35% | 3 |
| Salt Lake City | 190 | 75 | 39.47% | 129 |
| San Antonio | 226 | 129 | 57.08% | 191 |
| San Diego | 275 | 38 | 13.82% | 59 |
| San Francisco | 297 | 40 | 13.47% | 74 |
| San Juan | 266 | 143 | 53.76% | 161 |
| Seattle | 250 | 27 | 10.80% | 34 |
| Springfield | 203 | 63 | 31.03% | 64 |
| St Louis | 114 | 28 | 24.56% | 37 |
| Tampa | 269 | 30 | 11.15% | 35 |
| Washington Field | 333 | 255 | 76.58% | 316 |

(U///FOUO)  INSD AIIPs found the most common errors involved what the Lab defined as "Negotiable" versus "Other"; with 78 changes being made in this regard.  Likewise, 29

FBI_HQ-00017

UNCLASSIFIED//FOR OFFICIAL USE ONLY

changes were made when the valuable was originally carried as "Other" in Sentinel yet should have been categorized as "Checks."

### E.  (U)  Compliance Errors:

(U//FOUO)  Overall, INSD AIIPs made a total of 23,678 corrections involving 16,760 individual, sampled items while reviewing the overarching categories of Evidence Details (11,720/28.15%); Drugs (3638/24.53%); Firearms (698/4.8%) and Valuables (704/5.7%).  A complete breakdown of the fields changed, number of items changed, and error rates is depicted in the below charts. As each evidence item is comprised of all the below fields and may have had more than one change associated with it, error rates are independent, and cannot be tallied to 100%.

### Table 5:  Evidence Details – Total Items Audited 41,361

| Field Changed | Fields Corrected | Error Rate |
|---|---|---|
| Barcode | 320 | 0.77% |
| CaseID | 469 | 1.13% |
| CATS ID | 118 | 0.28% |
| Collected On Date/Time | 10905 | 26.19% |
| Description | 440 | 1.06% |
| Evidence Type | 15 | 0.04% |
| FBI Seizure | 167 | 0.40% |
| Holding Division | 15 | 0.04% |
| IB Number | 45 | 0.11% |

### Table 6:  Drugs – Total Items Audited 14,830

| Field Changed | Fields Corrected | Error Rate |
|---|---|---|
| Drug Lab Confirmation* | 2095 | 14.13% |
| Lab Analyzed Date | 1309 | 8.83% |
| Lab Confirmed Type | 723 | 4.88% |
| Lab Confirmed Weight | 1973 | 13.30% |
| Lab Sample Size | 963 | 6.49% |
| Lab Units | 1629 | 10.9866% |

*The x 20 items until had a rachial jare population size at one third

### Table 7:  Firearms – Total Items Audited 14,419

| Field Changed | Fields Corrected | Error Rate |
|---|---|---|
| Firearm Type | 60 | 0.42% |
| Made Safe By | 189 | 1.31% |
| Make | 229 | 1.59% |
| Model | 462 | 3.20% |
| Serial Number | 289 | 2.00% |

FBI_HQ-00018

UNCLASSIFIED//FOR OFFICIAL USE ONLY

Table 8:  Valuables – Total Items Audited 12,382

| Field Changed | Fields Corrected | Error Rate |
|---|---|---|
| Appraised Date | 55 | 0.44% |
| Check Recipient | 104 | 0.84% |
| Confirmed Counterfeit | 49 | 0.40% |
| Dye Pack | 87 | 0.70% |
| Other Valuable Type | 235 | 1.90% |
| Valuable Type | 188 | 1.52% |
| Valuable Dollar Value | 386 | 3.12% |
| Valuation Method | 159 | 1.28% |

i. (U) Analysis

(U//FOUO)  Per the FEMO PG, Section 4 - Procedures and Processes, Part 4.1.2 Chain-of-Custody provides, "It is essential that seized/recovered/contributed property is properly identified and described by investigative personnel at the time possession is transferred to the investigator."  In addition, at Part 4.5.5 - Collected Item Database, it notes the ECT ensures, by physical examination of property, that the descriptive data entered into the automated evidence system (aka, collected item database [CI]), as furnished by case agent/acquiring agent, adequately and properly reflects the property being retained. The necessity for accuracy in recording the Collected On date was also reiterated in the Lab's EC dated 02/11/2014, entitled *Field Evidence Review*.  As demonstrated in the table above, the "Collected On Date/Time" was the most frequent error found by INSD while reviewing Evidence Details, resulting in a total of 10,905 changes made and a 26.19% error rate.

(U//FOUO)  The most frequent errors found by INSD while reviewing Drugs was found in the Lab Confirmed Weight and Lab Confirmed Units.  As explained earlier herein, the guidance by the Lab PM on Drugs was inconsistent and likely contributed to the errors encountered during instant audit.

IV.    (U)  ITEMS UNAVAILABLE TO AUDIT

(U)  Of the 41,361 evidentiary items selected to audit, INSD identified a total of 1,729 (4.2%) unavailable to audit.  The reasons these items were unavailable broke down into four distinct categories and are summarized in the chart below:

Table 9:  Items Unavailable to Audit

| Evidence Type | Cannot Be Found | Charged Out to Another Agency/ Department | Disposed Of Yet Still Listed in Sentinel | Ghost Items | Totals |
|---|---|---|---|---|---|
| Drugs | 14 | 607 | 267 | 24 | 912 |
| Firearms | 17 | 176 | 235 | 22 | 450 |
| Valuables | 1 | 35 | 300 | 31 | 367 |
| Totals | 32/2% | 818/47% | 802/46% | 77/5% | 1729 |

FBI_HQ-00019

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U/FOUO)  The FEMO PG does not contain guidance on how to remove evidentiary items from Sentinel once disposed.  A review of the Lab's EC dated 02/11/2014 also lacked any details on this process.  Upon consulting with the Lab, INSD was provided stand alone guidance which was posted on the Lab's Field Evidence Unit (FEU) Webpage pertaining to Administrative Removals and Disposition Type.  A review of these documents revealed they were created in March 2014 in anticipation of the Lab's two month review period.  INSD could not locate any prior guidance with specific instructions to field on how to remove Sentinel evidentiary records once evidence was disposed.  Absent such guidance, the Sentinel records for drugs, firearms, and valuables were inaccurate in comparison to the FBI's actual drugs, firearms, and valuables inventory.  As noted in the chart above, INSD AIIPs identified 802 total items that had been disposed but the Sentinel entry still existed.  This accounted for nearly half of all the items INSD could not audit.

(U/FOUO)  In addition, INSD identified 77 Sentinel evidentiary items of record that were actually empty, "ghost" items.  This was due to a "split" function in which one 1B item was separated into two or more new 1B item numbers.  INSD located an All Division EC from the Lab dated 09/17/2013, entitled, *Evidence Enhancements in Sentinel* which provided, "when an evidence item is split, the original evidence item will maintain the original 1B number and barcode.  The split evidence item will receive the next available 1B number and barcode for the case."  The Lab also reiterated this point in their EC dated 02/11/2014.  Despite this guidance, INSD found there had been insufficient training and understanding for the field to understand its responsibilities.

## V. (U)  CATS ID NUMBERS AND FBI SEIZURE NUMBERS

(U/FOUO)  A total of 1,342 selected, sampled items were initially identified with CATS IDs or FBI Seizure Numbers.  During the audit, INSD identified an additional 75 selected items that had CATS IDs/Seizure Numbers associated with them yet these numbers were not entered into Sentinel for a grand total of 1,417 audited items that required CATS IDs/Seizure Numbers.  Of these 1,417 items, 181 (12.8%) had compliance errors predominantly with either a lack of a CATS ID and Seizure Number (75/41.4%) or an incorrect CATS ID and/or FBI Seizure Number (95/52.5%).  The remaining 11 errors resulted when an item inappropriately possessed a CATS ID/Seizure Number (7/3.9%) or lacked a CATS ID or Seizure Number (4/2.2%).

(U/FOUO)  Due to the potential magnitude of additional assets being handled by the FBI being recorded on both the FBI's Financial Statement and DOJ's Assets Forfeiture Fund (AFF) Financial Statement, INSD also cross-referenced all remaining Sentinel records with CATS IDs or FBI Seizure Numbers, and compared them with the forfeiture records provide by the Finance Division.  Therein, an additional 2,369 unique Sentinel evidence records with CATS ID or FBI Seizure Number errors were identified.

(U//FOUO)  Per the Lab's EC on *Evidence Enhancements in Sentinel*, it provided, "Once a seized evidence item is entered into the Consolidated Assets Tracking System (CATS) for forfeiture by the Forfeiture Paralegal Specialist (FPS), the FPS **must** then immediately notify the Evidence Control Technician (ECT) via email and provide the ECT with the following:  Case ID

FBI_HQ-00020

UNCLASSIFIED//FOR OFFICIAL USE ONLY

Number. Barcode Number. 1B Number, CATS ID Number and the FBI Seizure Number. The ECT must then immediately 'update' the associated evidence entry in the FBI's Sentinel evidence system with both the CATS and FBI Seizure numbers in the new data fields provided."

(U//FOUO) A comparison based on the Case ID and 1B number between FD Forfeiture records and the associated Sentinel records for the period of 04/28/1994 through 01/31/2014 was conducted. The results identified 2,439 items including 2,369 unique Sentinel records with discrepancies. The following chart depicts these errors:

### Table 10: CATS ID Numbers and FBI Seizure Number Errors

| Error Identified | Sentinel Evidence Items |
|---|---|
| CATS ID or FBI Seizure Number not entered in Sentinel | 1550 |
| Sentinel and FD CATS IDs match, but the FBI Seizure Numbers do NOT match | 26 |
| Sentinel and FD FBI Seizure Numbers match, but the CATS ID do NOT match | 35 |
| Sentinel CATS ID or FBI Seizure Number does not match FD records | 126 |
| Sentinel Drug Evidence Items with CATS ID or FBI Seizure Number | 94 |
| Sentinel records with the same CATS ID entered in Sentinel with different FBI Seizure Numbers | 220 |
| Sentinel records with the same FBI Seizure Number entered in Sentinel with different CATS ID number | 388 |

(U/FOUO) In sum, combining the results of INSD's randomly, sampled items and the remainder of Sentinel items with CATS IDs or FBI Seizure Numbers, a total of 2,550 unique Sentinel records had errors associated with CATS IDs and/or FBI Seizure Numbers.

## VI. (U) ADDITIONAL COMPLIANCE CONCERNS

(U) While conducting the audit, INSD also encountered additional areas of concern potentially impacting compliance of Sentinel records for drugs, firearms, and valuables evidence. These involved barcodes and charged-out items.

### A. (U) Barcodes

(U//FOUO) INSD found multiple pieces of evidence in Sentinel sharing the same barcode number with other pieces of evidence. Specifically, a review of the 195,238 Sentinel records for drugs, firearms, and valuables as of 1/31/2014, INSD identified 618 instances in which a single barcode was assigned to multiple evidence records in Sentinel. For example, barcode number E4568973 was assigned to both 245D-DE-103314-1B42 (drugs) as well as 245D-CO-2468752-1B75 (drugs). Also, E5037566 was assigned to both 281R-SA-3860192-1B36 (firearm) and 281R-SA-3860192-1B37 (firearm). INSD also identified, in addition to sampled items, 1,304 items of drugs, firearms, and valuables which lacked a barcode number.

18

UNCLASSIFIED//FOR OFFICIAL USE ONLY

### B.  (U)  Charged-Out Items

(U/FOUO)  INSD identified 2,914 (7%) of the sampled 41,631 items of evidence as charged-out. Among the 2,914 charged-out evidence items, 1,641 (56%) had been charged out for more than 120 days. The FEMO PG, Section 4.18 provides specific guidance on Charge-Out Procedures - Evidentiary Property as it relates to charging out, reminders, re-charging, and reporting. Specifically, it stated:

#### 4.18.1 (U//FOUO) Evidence Stored in the ECR

(U//FOUO) Evidence stored in the ECR, or other evidence storage facilities, may be charged out to any employee having an official need. Evidence may be charged out for up to 60 calendar days and recharged at the end of those 60 days. If necessary, the evidence may be charged out every 60 days thereafter as follows:

- (U//FOUO) The ECT is to record chain-of-custody on the automated FD-192 and in the collected item database.
- (U//FOUO) The package copy of the automated FD-192 must remain with the evidence. Care should be exercised by the employee accepting custody of the evidence to ensure that chain-of-custody information is recorded on the package copy of the automated FD-192.

#### 4.18.2 (U//FOUO) Collected Item Database Charge-Out Reminders

(U//FOUO) The ECT must run the collected item database charge-out reminders, and recharge evidence every week or every two weeks, depending on the size of the field office. This report should encompass all items charged-out from 01/01/1970, to present.

#### 4.18.3 (U//FOUO) Recharged Evidence

(U//FOUO) If the evidence is to be recharged, the person to whom the evidence is currently charged out must initial next to that item on the Evidence Charge-Out Report and return the report to the ECT. If the evidence is no longer required to be charged out, the person to whom the evidence is currently charged out must immediately return the evidence to the ECR for storage.

#### 4.18.4 (U//FOUO) Charge-Out Report

(U//FOUO) Two copies of the Charge-Out Report should be printed by the ECT. One copy is forwarded to the appropriate squad supervisor for initialing by appropriate squad personnel. The second copy is maintained by the ECT to reconcile responses from each squad/RA. Charged-out evidence must appear on the Charge-Out Report at 60-day intervals until the evidence is returned to the ECR for storage.

(U//FOUO) The top and bottom copies of the Charge-Out Report must be maintained by the ECT for two inspection periods.

(U)  To ensure compliance, all aspects of the FEMO PG must be adhered to when items are removed from the ECR. INSD identified many charged-out items that had been removed for lengthy periods of time, long after an "official need" for possession continued to exist.

FBI_HQ-00022

UNCLASSIFIED//FOR OFFICIAL USE ONLY

## VII. (U) CONCLUSION

(U)  Between 2/10/2014 to 4/8/2014, the FBI Lab provided all field offices a two month period to update and verify each Sentinel entry for all firearms, valuables, and drug evidence. Inspection Division (INSD) was to follow with an audit to assess the effectiveness of these efforts.

(U)  Between 4/22/2014 to 5/2/2014, INSD audited a total of 41,631 Sentinel entries of firearms (14,419), valuables (12,382), and drug (14,830) evidence across all 56 field offices.  For each field office, a representative sampling of its firearms, valuables, and drug evidence was randomly selected from its total firearm, valuables, and drug evidence to provide INSD a 95% confidence level with a 5% level of precision that the compliance results were representative of all evidence.

(U)  The audit identified 18,615 (45%) of the total items had errors, many with multiple errors.  Nine thousand seven hundred sixty six (9,765/66%) compliance errors were associated with drug evidence; 4,695 (33%) were associated with firearms evidence; and 4,164 (34%) involved valuable evidence.  The drug error rate was significantly higher than the firearms and valuables due to a Sentinel functionality flaw.  When the flawed Sentinel drug entries are removed from the drug calculation, the drug error rate dropped to 37%.

(U)  As a result of the audit, the FBI's total reportable values were determined to be as follows: 1) valuable dollar figure decreased by $1,413,862.17; 2) Lab confirmed true drug weight increased by 1,935.47 kilograms; and 3) number of weapons increased by 20.  While a majority of the errors did not impact the FBI's reportable values, the FBI's system of record, Sentinel, was inaccurate in many aspects for these items.  A majority of the errors identified were due in large part to human error, attributable to a lack of training and program management oversight.

(U)  To mitigate these errors in the future, INSD makes the following 12 Observations/ Instructions/Recommendations.

FBI_HQ-00023

UNCLASSIFIED//FOR OFFICIAL USE ONLY

## VIII. (U) OBSERVATIONS AND RECOMMENDATIONS

(U//FOUO) **Observation 1**: Deficiencies identified during the evidence audit resulted from a lack of Lab's Field Evidence Unit (FEU) Program Management and Guidance to the Field Evidence Program Managers (FEPM) and Evidence Control Technicians (ECT) to ensure adequate oversight of internal controls and compliance over the field office evidence program.

(U//FOUO) **Analysis 1**: The FBI Laboratory's Field Evidence Management and Operations Policy Implementation Guide ( FEMO PG), 0120PG, effective October 27, 2009, Section 2.2 provided, "The Field Evidence Program Manager, or individuals designated by the Field Evidence Program Manager, is responsible for developing, administering, operating, managing, and maintaining all aspects of the FBI Evidence Program. Establishing standards and operating procedures to ensure the highest degree of consistency and compliance to federal rules and regulations governing the handling of evidence." This included a responsibility to "promulgate" written FBI Evidence Policy throughout the FBI and ensure that all evidence manuals/training guides were factual and current. It also included responsibility for conducting on-site and regional training of FBI personnel, to include field office upper management.

(U//FOUO) The FEMO PG was published in 2009 and does not contain pertinent Sentinel evidence information as Sentinel became the FBI's official system of record in 2012. Interim guidance, via EC entitled *Evidence Enhancements in Sentinel* (dated 09/17/2013) was issued to the field providing instruction on entering evidence items into Sentinel. Although follow-on guidance was posted to FEU website to assist the field, the information was only added just prior to the Lab review which began in February 2014.

(U//FOUO) INSD's Evidence Audit determined FEU did not provide continual, updated training to FEPMs and ECTs. The lack of training was evident in the deficiencies identified across all field offices during INSD's audit, to include: duplicate barcodes, evidence items not properly disposed of within Sentinel, multiple evidence items were not properly split, and CATS and/or Seizure Numbers not recorded in Sentinel.

(U//FOUO) **Recommendation 1**: AD, Lab should ensure the FEU PM provide training and updated guidance for all FEPMs and ECTs, as well as any other personnel involved in the field office evidence process.

FBI_HQ-00024

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U//FOUO) **Observation 2:**  The current ECT reporting structure inhibits strict compliance and understanding of the FEMO PG.

(U//FOUO) **Analysis:**  The FBI Lab maintains program management for the field evidence program; however, each ADIC/SAC, or designee, is responsible for ensuring compliance.  The FEMO PG, Section 2.1, states "All field office ADICs and SACs, or individuals designated by the division, are responsible for ensuring compliance with all matters identified by this policy." Section 2.2 of the FEMO PG describes the responsibilities of the Field Evidence Program Manager (FEPM) to include, "Developing, administering, operating, managing, and maintaining all aspects of the FBI Evidence Program…Issuing directives, determining manpower utilization and work measurement techniques to maintain current evidence operations."

(U//FOUO)  The current reporting structure does not allow the overarching PM (the Lab) sufficient control and oversight to ensure compliance with the field evidence program.  Strict compliance to the PG and other guidance issued by Lab was not adhered to as was evident in the error rates identified in this audit.  In addition, INSD encountered varying levels of understanding of the evidence guidance issued to the field office FEMP and ECTs.

(U//FOUO) **Recommendation 2:**  AD, Lab should examine the feasibility of having field office FEPM and ECT(s) report directly to the Lab.

FBI_HQ-00025

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U//FOUO) **Observation 3:** Sentinel is automatically pre-populating new drug evidence entries as "Unconfirmed."

(U//FOUO) **Analysis 3:** INSD determined Sentinel automatically pre-populated the "Drug Lab Confirmation" field with "Unconfirmed." Per the Lab FEU EC, *Evidence Management Operations,* dated 02/11/2014, "If the drug is *Unconfirmed* from a drug laboratory, it is neither confirmed true nor false that it is a drug."

(U//FOUO) Per the Lab's guidance, the unconfirmed option was intended to be used by field office ECTs upon the receipt of the DEA 7 to update the drug information within Sentinel. The Sentinel "unconfirmed" pre-population indicates drug evidence has been sent to and evaluated by a laboratory. To have all new drug entries automatically bear this status improperly assumes the fact that all drug evidence has been sent to a laboratory and/or that results have not yet been returned when in fact that is incorrect.

(U//FOUO) Of INSD's sampled 14,830 drug evidence items, 4,267 had this error within Sentinel. This Sentinel flaw inflated the overall drug error rate to 65.85%. With the removal of the pre-population error, the drug error rate dropped to 37.07%.

(U//FOUO) **Recommendation 3:** AD, ITED should consider a technical solution to remove the automatic pre-population of the "Drug Lab Confirmation" field.

23

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U//FOUO) **Observation 4:** Deficiencies were noted in the guidance provided to the ECTs regarding the handling and documentation of drug evidence.

(U//FOUO) **Analysis 4:** INSD identified deficiencies in the handling of drug evidence lab reports. The FEMO PG, Section 4.9.10 states, "DEA Form 7 (Report of Drug Property Collected, Purchased or Seized) is a six-part form (original and five copies) and is to be used when transmitting drug evidence to the DEA Laboratory…These copies contain results of the DEA analyses and are to be filed in the 1A section (FD-340a) of the case file of the respective field office." In addition, the FEMO PG, Section 4.9.14 states, "If evidence is being transmitted from a field office to FBIHQ or a DEA Laboratory, it must first be charged out manually and documented in the collected item database…The ECT in the transmitting office must record the manual chain-of-custody on the automated FD-192 maintained with the evidence. (Refer to Chain-of-Custody User Guide.) The package copy of the automated FD-192 is retained in the ECR and filed in a binder/folder labeled 'Evidence Sent to FBI (or DEA) Laboratory' according to the date of transmittal. When the evidence is returned, the ECT is to record chain-of-custody on the automated FD-192 maintained with the evidence and in the collected item database."

(U//FOUO) INSD's Evidence Audit determined the lack of documentation within the Evidence Control Room (ECR) resulted in no mechanism for the ECR to maintain appropriate and detailed accounting for the drug evidence. Throughout the audit, the AIIPs could not readily confirm the drug evidence information detailed in Sentinel because the evidence lacked the required DEA Form 7 and/or an updated chain-of-custody.

(U//FOUO) The FEMO PG, Section 4.9.10 stated, "When drugs are returned from the DEA Laboratory, the ECT is responsible for making appropriate modifications in the collected item database. When drugs come back confirmed, 'Drug Type' and 'Drug Confirmed' fields must be modified as such in the collected item database. The 'approximate gross weight' of the 'total package' drug weight in the 'Drug Weight' field must be changed to show the official DEA laboratory-determined 'total package weight.' To document all weights, the 'Description' field of the collected item database must then be modified as follows: 'Original approximate gross weight of the total package before analysis was _____.' 'DEA confirmed weight after analysis is _____.'"

(U//FOUO) In February 2014, guidance was also provided on the Field Evidence Unit's website under the Evidence Guidance All Documents, entitled *Drug Evidence*. The Drug Evidence document reiterated the previous guidance except with regard to documenting the "Total Package Weight" after the drugs have been sent to a drug laboratory for analysis and the laboratory provided an actual "confirmed" weight. The Drug Evidence document stated, "Do not change the original 'Total Package Weight' entered. You may enter this information into the 'Description' if you choose, however it is not necessary." INSD determined this guidance was not in line with the FEMO PG which required the documentation of all weights within the "Description" field.

(U//FOUO) INSD determined the only guidance provided concerning legacy drug evidence was documented on the Field Evidence Unit's (FEU's) website under the Evidence Guidance All Documents, entitled *Drug Laboratory Reports*.

24

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U//FOUO)  As the follow-up guidance provided to the field offices was not consistently disseminated, and due to the volume of varying documents providing the guidance, INSD determined the guidance to be unclear and found inconsistencies with the FEMO PG.  This was observed throughout the Evidence Audit based on the varied methods for documenting the drug evidence and through interaction with the FEU during the audit.

(U//FOUO)  Although follow-on guidance by FEU via ECs and documentation on FEU's website existed, INSD's Evidence Audit determined this information had not transitioned to the ECTs within the field offices to be consistently implemented.  Specifically, INSD's Evidence Audit resulted in 14,830 drug items reviewed, of which 9,765 (65%) drug items had errors and 18,776 specific errors were identified.

(U//FOUO)  **Instruction 4**:  AD, Lab should ensure field office's review all drug evidence entries within Sentinel to ensure accurate documentation of drug analysis.

(U//FOUO)  **Recommendation 4a**:  AD, Lab should consider updating the FEMO PG to include clear, updated guidance on the handling and documentation of drug evidence, to include legacy drug evidence.

(U//FOUO)  **Recommendation 4b**:  AD, Lab should consider providing training to the all FEPM and ECTs on the handling, documentation, and disposal of all drug evidence.

25

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U) **Observation 5:** For firearm evidence submissions, there is no specific policy outlining visible indicators which must be placed on a firearm to acknowledge it was "rendered safe."

(U) **Analysis:** The FBI Laboratory's Field Evidence Management and Operations Policy Implementation Guide (PG), 0120PG, effective October 27, 2009, provides at Section 4.8.5:

> Firearms are not to be accepted by the ECT for storage until they have been examined by a field office firearms instructor (if a field office does not have a firearms instructor, a Special Weapons and Tactics [SWAT] member may be used) and rendered safe.

> The firearms instructor is to certify the examination by:

- Signing his/her name.
- Placing the date that the weapon was examined and rendered safe in the lower portion of the chain-of-custody page of the package copy of the automated FD-192.
- Chain-of-custody information is not to be recorded if possession of the firearm does not change during the safety examination. Once rendered safe, firearms may be stored in a secured cabinet or on open shelving within the ECR.

(U//FOUO) INSD noted no discernible policy requiring the placement of any visible markings on a firearm to clearly indicate the firearm was "rendered safe." This became apparent when multiple AIIPs initially identified weapons as not "rendered safe," due to what they believed was the lack of any visible marking on the actual firearm, to include possibly a zip-tie, plug, or sticker, to indicate the firearm was "rendered safe." In the absence of such visible indicators, one does not know if the firearm is still loaded and/or capable of firing if not handled appropriately. For safety reasons, a visible marking should be included in addition to the current requirements for firearms before acceptance by the ECT for storage.

(U) **Recommendation 5:** AD, Lab should consider developing a formal requirement for a visible marking indicator on firearm evidence submissions to ensure each firearm is truly "rendered safe."

26

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U) **Observation 6:** The Evidence Audit identified 77 Sentinel evidence records that were actually "ghost" items and did not exist.

(U) **Analysis:** INSD found 77 of the randomly sampled evidence records to be active evidence records within Sentinel, but were in fact "ghost" records created by a split function. "Ghost" items were created when an evidence record was split. According to an EC from Lab, dated 09/17/2013, entitled *Evidence Enhancements in Sentinel,* "when an evidence item split, the original evidence item will maintain the original IB number and barcode. The split evidence item receives the next available IB number and barcode for the case." The split function has instead left the original IB empty or a "ghost" and creates at least two new IB numbers. The "ghost" IB appears in Sentinel as an active evidence record; however, it is in fact empty.

(U//FOUO) For way of example, INSD found barcode E5233728 was assigned 1B120. When the evidence was returned from the DEA lab, the evidence was split and given two new 1B numbers 1B136 (confirmed drugs) and 1B137 (drug wrapper). 1B136 maintained the original barcode given to 1B120. All three 1B numbers were still in listed in Sentinel but only 1B136 and 1B137 were directly related to the evidence.

(U//FOUO) In another instance, barcode E4479606 was assigned 1B2. Evidence was then split into 1B7 (collectibles), 1B8 (U.S. Currency), 1B9 (Jewelry), and 1B10 (Canadian Currency) yet none of the newly created 1B numbers retained the original barcode. The original 1B number and barcode were still in Sentinel as a "ghost" record but no physical corresponding evidence existed in reality.

(U//FOUO) The Lab posted guidance on their website (03/15/2014) entitled, *Splits Guidance.* This guidance provided instruction on how to properly split evidence within Sentinel; however, it lacked direction on "ghost" items. In addition, the Lab posted on guidance entitled, *Administrative Removal,* (03/18/2014) which addressed handling the removal of ghost items within Sentinel but this was not posted until the two month Lab review was already underway. No guidance regarding this matter was provided to the field FEPM or ECTs prior to the field evidence review.

(U) **Instruction 6:** AD, Lab must ensure all "ghost" items are removed from Sentinel as they do not reflect actual evidence items.

(U) **Recommendation 6:** AD, Lab should provide additional training and oversight to the field on splitting evidentiary items.

FBI_HQ-00030

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U) **Observation 7:** The INSD Evidence Audit identified 32 evidence items within the sample that could not be located.

(U//FOUO)   **Analysis:** INSD identified 32 randomly selected evidence items across sixteen different field offices that could not be located for physical inventory. The chart below depicts the type of evidence item that could not be found by field office.

| Field Office | Drugs | Firearms - Other | Firearms - Weapon | Valuables | Number of Total Items |
|---|---|---|---|---|---|
| Baltimore | | 2 | | | 2 |
| Boston | 5 | 3 | | | 8 |
| Charlotte | | 1 | | | 1 |
| Chicago | 1 | | | | 1 |
| Cincinnati | | 1 | | | 1 |
| Detroit | 1 | 1 | | | 2 |
| Jackson | | 1 | | | 1 |
| Milwaukee | 1 | | | | 1 |
| Minneapolis | 1 | | | | 1 |
| New Orleans | | 1 | | | 1 |
| New York | 1 | 1 | 1* | | 3 |
| Oklahoma City | | 1 | | | 1 |
| Philadelphia | 4 | | | | 4 |
| Pittsburgh | | 1 | | | 1 |
| Portland | | | | 1 | 1 |
| WFO | | 3 | | | 3 |
| **TOTAL** | **14** | **16** | **1*** | **1** | **32** |

*Missing weapon was confirmed to be a handgun.

(U//FOUO) The FEMO PG does not address a reporting process for missing evidence items nor does the PG provide guidance on how to record missing evidence within Sentinel. No other guidance was located by INSD on this topic.

(U//FOUO) **Instruction 7:** AD, Lab must ensure all missing items are either located or dispositioned out of Sentinel as appropriate.

(U//FOUO) **Recommendation 7**: AD, Lab should develop guidance on procedures to report evidence items that cannot be located and steps to take within Sentinel as appropriate.

FBI_HQ-00031

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U) **Observation 8:** The "Collected On" date and/or time fields within Sentinel were inaccurate.

(U//FOUO) **Analysis:** INSD determined 10,905 evidentiary items (26.19%) of the sampled items had incorrect "Collected On" date and/or time fields within Sentinel. The majority of these instances involved the time entry. As Sentinel is the FBI's official system of record, it must be accurate and reliable.

(U//FOUO) The FBI Laboratory's FEMO Policy PG provides at Sections 4.5.6 and 5.4:

(U//FOUO) **4.5.6  Recordkeeping, Storage, and Maintenance of Evidence**
The ECT is responsible for the recordkeeping, storage, and maintenance of all evidence.

(U//FOUO) **5.4.  Evidence Entered Into the Collected Item Database**
Seized/recovered/contributed evidence is 'properly captured' (emphasis added) in the collected item database within ten calendar days from the date the evidence and/or documentation was presented to him/her by the seizing agent.

(U//FOUO) In addition, DIOG, Section 3.3.1.11 provides responsibilities of FBI employees in regards to creating and maintaining records:

(U//FOUO) **3.3.1.11 Create and Maintain Records/Files**
Create and maintain authentic, reliable, and trustworthy records, establish files, set leads, supervise investigations, index documents, and retain and share information...

(U//FOUO) Lastly, via the Lab's 02/11/2014 EC, the Lab directed all divisions to conduct a 100% review of their Drugs, Firearms, and Valuable evidence. Therein, the Lab noted "**Each evidence item** must be viewed for verification. Compare for accurate information in Sentinel, on the printed FD-1087/FD192 and on the evidence package (if written)/FD-192." Evidence details to be verified included the "Collected On" date as well as the accuracy of the FD-1004 Original Chain-of-Custody documenting the "Collected On Time."

(U//FOUO) **Instruction 8:** AD, Lab should ensure all field offices review the "Collected On" time and date entries within Sentinel for Drugs, Firearms, and Valuable Evidence for accuracy.

FBI_HQ-00032

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U) **Observation 9:** The Evidence Audit identified 802 disposed pieces of evidence in which the disposal was not properly recorded in Sentinel, the FBI system of record.

(U//FOUO) **Analysis:** Eight hundred and two (1.9%) of the sampled 41,631 pieces of evidence were disposed of, but the disposal information was not properly recorded in Sentinel. Therefore, it appeared in 802 instances the FBI had items of evidence when in fact they had been disposed of. Sentinel is the FBI official record keeping system for evidence, and the status of evidence in Sentinel is required to be accurate. Failure to record disposed evidence items in Sentinel properly will prevent an accurate account of evidence items in the possession of the FBI. The chart below depicts the disposed items by evidence type.

| DISPOSED ITEMS | |
|---|---|
| Evidence Type | Number of Items |
| Drugs | 267 |
| Firearms | 235 |
| Valuables | 300 |
| **TOTAL** | **802** |

(U//FOUO) The FEMO PG (0120PG), Section 4.18.1 states, "When evidence is permanently released to the custody of an outside agency, disposition and chain-of-custody documentation is to be recorded on the package copy of the automated FD-192 and in the collected item database." The PG does not contain an official time frame for the disposal of an evidence item within Sentinel nor does it detail steps to be taken to remove items from Sentinel once disposed.

(U//FOUO) **Instruction 9:** AD, Lab will ensure all disposed items are removed from Sentinel.

(U//FOUO) **Recommendation 9:** AD, Lab should ensure a detailed written policy is inserted into the FEMO PG with regard to the disposition of an evidence item from within Sentinel.

FBI_HQ-00033

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U//FOUO)  **Observation 10**:  Charge-out evidence is not being properly controlled.

(U//FOUO)  **Analysis**:  The FEMO PG, Section 4.18.1 stated, "Evidence stored in the ECR, or other evidence storage facilities, may be charged out to any employee having an official need.  Evidence may be charged out for up to 60 calendar days and recharged at the end of those 60 days."  Section 4.18.3 continued, "If the evidence is to be recharged, the person to whom the evidence is currently charged out must initial next to that item on the Evidence Charge-Out Report and return the report to the ECT.  If the evidence is no longer required to be charged out, the person to whom the evidence is currently charged out must immediately return the evidence to the ECR for storage."

(U//FOUO)  INSD identified 2, 914 (7%) of the sampled 41,631 items of evidence as charged-out.  Among the 2,914 charged-out evidence items, 1,641 (56%) had been charged out for more than 120 days.

(U//FOUO)  For example, Case ID 087-NK-109376 contains a drug evidence item that has been charged-out in Sentinel since 12/24/2003.  Case ID 029R-BS-96903 contains a valuable evidence item that has been charged-out since 07/19/2006.  There was no documentation located to support an "official need" for this length of time.

(U//FOUO)  **Instruction 10**:  AD, Lab must conduct a review of all charged out evidence to ensure the standards per the FEMO PG exist.

(U//FOUO)  **Recommendation 10a**:  AD, Lab should consider updating the FEMO PG to provide more specific timeframes for charged-out evidence.

(U//FOUO)  **Recommendation 10b**:  AD, Lab should examine the feasibility of automating the recharge process within Sentinel.

31

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U//FOUO) **Observation 11**: Identical barcode numbers were assigned to multiple pieces of evidence and items of evidence were not assigned a barcode.

(U//FOUO) **Analysis**: The FEMO PG Section 4.5.9 stated:

> The ECT ensures every container of evidence has its own, FD-192, FD-1004, and barcode. A barcode must be affixed to each container.

(U//FOUO) A review of the 195,238 drug, valuable, and firearm evidence records as of 01/31/2014, identified 618 instances in which a single barcode number was assigned to multiple evidence records in Sentinel. For instance barcode number E4568973 is used for both 245D-DE-103314-1B42 (42.65 grams of crack cocaine) and 245D-CO-2468752-1B75 (1.75 kilograms of crack cocaine). The FBI utilizes the barcode and 1B number for evidence tracking purposes. A unique barcode for each item of evidence is necessary and required for this purpose.

(U//FOUO) A review of the 195,238 evidence items also indicated 1,304 items did not have a barcode.

| Evidence Items with No Barcode | |
| --- | --- |
| **Evidence Type** | **Evidence Items** |
| Drugs | 417 |
| Firearms | 418 |
| Valuables | 469 |

(U//FOUO) **Instruction 11**: AD, Lab will ensure all pieces of evidence are assigned unique barcodes.

FBI_HQ-00035

UNCLASSIFIED//FOR OFFICIAL USE ONLY

(U//FOUO) **Observation 12:** The Evidence Audit identified errors with CATS IDs and FBI Seizure Numbers.

(U//FOUO) **Analysis 12a:** INSD found 181 (12.8%) CATS IDs or FBI Seizure Number errors within the 1,417 randomly sampled Sentinel records. These were as follows:

| ERROR | Number of Sentinel Evidence Items |
|---|---|
| The Sentinel record was missing the CATS ID and FBI Seizure Number. | 75 |
| The CATS ID and/or FBI Seizure Number was entered incorrectly in Sentinel. | 95 |
| The Sentinel record should not have had a CATS ID and/or FBI Seizure Number associated with it. | 7 |
| The Sentinel record was missing either the CATS ID or FBI Seizure Number. | 4 |
| Total | 181 |

(U//FOUO) **Analysis 12b:** INSD also cross-referenced all of Sentinel records with CATS IDs or FBI Seizure Numbers, and compared them with the forfeiture records provide by the Finance Division, and identified 2,369 unique evidence items with CATS ID or FBI Seizure Number issues.

(U//FOUO) Via All Division EC issued by Lab, dated 09/17/2013, 321A-HQ-A1491998, entitled "Evidence Enhancements in Sentinel," it stated "Once a seized evidence item is entered into the Consolidated Assets Tracking System (CATS) for forfeiture by the Forfeiture Paralegal Specialist (FPS), the FPS **must** then immediately notify the Evidence Control Technician (ECT) via email and provide the ECT with the following:  Case ID Number, Barcode Number, 1B Number, CATS ID Number and the FBI Seizure Number.  The ECT **must** then immediately "update" the associated evidence entry in the FBI's Sentinel evidence system with both the CATS and FBI Seizure numbers in the new data fields provided."

(U//FOUO) A comparison based on the CaseID and 1B# between FD Forfeiture records and the associated Sentinel records for the period of 04/28/1994 through 01/31/2014 was conducted. The results identified 2,439 issues including 2,369 unique evidence items.

| ISSUE | |
|---|---|
| CATS or Seizure Number Not Entered In Sentinel | 1,550 |
| Sentinel and FD CATS ID Numbers Match, but the Seizure Numbers **do not** match | 26 |
| Sentinel and FD Seizure Numbers Match, but the CATS IDs **do not** match | 35 |
| Sentinel CATS or Seizure Number **Does Not** Match FD records | 126 |
| Sentinel Drug Evidence Items with CATS or FBI Seizure Number | 94 |

33

FBI_HQ-00036

UNCLASSIFIED//FOR OFFICIAL USE ONLY

| | |
|---|---|
| Sentinel Records with the same CATS ID number entered in Sentinel with different Seizure Numbers | 220 |
| Sentinel Records with the same Seizure Number entered in Sentinel with different CATS ID numbers | 388 |
| **Total** | **2439** |

Note: One evidence item may have more than one issue.

(U//FOUO) **Instruction 12:**  AD, Lab will coordinate with AD, FD to ensure the above-mentioned CATS and Seizure Numbers in for property items seized for forfeiture, held as evidence, or temporarily stored in the Field Office Evidence Control Room pending transfer to another custodial agency are corrected in Sentinel.

FBI_HQ-00037

UNCLASSIFIED//FOR OFFICIAL USE ONLY

## IX.  (U)  LIST OF ATTACHMENTS

Attachment A:  Inspection Staffing Roster

Attachment B:  Abbreviations

Attachment C:  Audit Questions

35

(Rev. by scs on 04/17/2013)

## Attachment B:  Abbreviations

The following abbreviations are utilized in the body of inspection reports:

| | |
|---|---|
| A/ | Acting |
| ACS | Automated Case Support System |
| AD | Assistant Director |
| ADC | Associate Division Counsel |
| ADD | Associate Deputy Director |
| AG | Attorney General |
| AGG | Attorney General Guidelines |
| AIIP | Assistant Inspector-in-Place |
| ALAT | Assistant Legal Attaché |
| AOB | Average on Board |
| AOR | Area of Responsibility |
| ASAC | Assistant Special Agent in Charge |
| ASC | Assistant Section Chief |
| AUSA | Assistant United States Attorney |
| CCP | Computer Crimes Program |
| CD | Counterintelligence Division |
| CDC | Chief Division Counsel |
| CFC | Complex Financial Crime |
| CFCP | Complex Financial Crime Program |
| CHS | Confidential Human Source |
| CHSC | Confidential Human Source Coordinator |
| CHSPG | Confidential Human Source Police Implementation Guide |
| CI | Counterintelligence |
| CID | Criminal Investigative Division |
| CIO | Chief Information Officer |
| CIP | Computer Intrusion Program |
| CIRG | Critical Incident Response Group |
| CJIS | Criminal Justice Information Services Division |
| CMC | Crisis Management Coordinator |
| COB | Close of Business |
| CORE | Collection Operations and Requirements Environment |
| CPD | Corporate Policy Directive |
| CPN | Corporate Policy Notice |
| CPO | Corporate Policy Office |
| CR | Civil Rights |
| CRP | Civil Rights Program |
| CS | Computer Scientist |
| CSO | Chief Security Officer |
| CT | Counterterrorism |
| CTD | Counterterrorism Division |
| CTP | Counterterrorism Preparedness |
| CyP | Cyber Program |

(Rev. by scs on 04/17/2013)

| | |
|---|---|
| CyD | Cyber Division |
| DAD | Deputy Assistant Director |
| DAOP | Double Agent Operation |
| DCO | Division Compliance Officer |
| DD | Deputy Director |
| DI | Directorate of Intelligence |
| DIN | Domain Intelligence Note |
| DIOG | Domestic Investigations and Operations Guide |
| DLAT | Deputy Legal Attaché |
| DMC | Domain Management Coordinator |
| DO | Director's Office |
| DOJ | Department of Justice |
| DPD | Division Policy Directive |
| DT | Domestic Terrorism |
| DTA | Division Threat Analysis |
| DTO | Drug Trafficking Organization |
| DTP | Domestic Terrorism Program |
| DWS | Data Warehouse System |
| EAD | Executive Assistant Director |
| EC | Electronic Communication |
| ECPA | Electronic Communications Privacy Act |
| EIA | Embedded Intelligence Analyst |
| ELSUR | Electronic Surveillance |
| EM | Executive Management |
| E-mail | Electronic Mail |
| EOD | Enter On Duty |
| ERT | Evidence Response Team |
| FACE | Freedom of Access to Clinic Entrances |
| FAM | Federal Air Marshal |
| FATG | Fraud Against the Government |
| FBI | Federal Bureau of Investigation |
| FBIHQ | FBI Headquarters |
| FCI | Foreign Counterintelligence |
| FD | Finance Division |
| FI | Full Investigation |
| FIDS | FBI IIR Dissemination System |
| FIF | Financial Institution Fraud |
| FIG | Field Intelligence Group |
| FISA | Foreign Intelligence Surveillance Act |
| FISAMS | Foreign Intelligence Surveillance Act Management System |
| FISC | Foreign Intelligence Surveillance Court |
| FLSD | Facilities and Logistics Services Division |
| FOASR | Field Office Annual Source Reporting |
| FOIA | Freedom of Information Act |
| FPO | Federal Prosecuting Official |
| FSL | Funded Staffing Level |

(Rev. by scs on 04/17/2013)

| | |
|---|---|
| FTR | Federal Travel Regulations |
| FY | Fiscal Year |
| GAGAS | Generally Accepted Government Auditing Standards |
| G/CEP | Gang/Criminal Enterprise Program |
| GPC | Government Purchase Card |
| HCF | Health Care Fraud |
| HIDTA | High Intensity Drug Trafficking Area |
| HRD | Human Resources Division |
| HQC | Headquarters City |
| HUMINT | Human Intelligence |
| IA | Intelligence Analyst |
| IB | Intelligence Bulletin |
| IDW | Investigative Data Warehouse |
| IG | Inspector General |
| I/Is | Indictments/Informations |
| IIC | Inspector-in-Charge |
| IINI | Innocent Images National Initiative |
| IIR | Intelligence Information Report |
| INSD | Inspection Division |
| IOB | Intelligence Oversight Board |
| IOD | International Operations Division |
| IP | Intelligence Program |
| IPC | Intelligence Program Coordinator |
| IPM | Intelligence Program Manager |
| IPO | Internal Purchase Order |
| IPR | Intellectual Property Rights |
| IRAM | Inspection Risk Assessment Matrix |
| ISF | Intelligence Submission Form |
| ISPs | Internet Service Providers |
| IT | International Terrorism |
| ITP | International Terrorism Program |
| ITSD | Information Technology Services Division |
| JTTF | Joint Terrorism Task Force |
| LA/SWBT | Latin America/Southwest Border Threat |
| LA/SWBTP | Latin America/Southwest Border Threat Program |
| LD | Laboratory Division |
| LEGAT | Legal Attaché |
| LOA | LEGAT Operations Assistant |
| MAOP | Manual of Administrative Operations and Procedures |
| MAPA | Management and Program Analyst |
| MIOG | Manual of Investigative Operations and Guidelines |
| MOU | Memorandum of Understanding |
| MST | Mobile Surveillance Team |
| MST-A | Mobile Surveillance Team-Armed |
| NA | FBI National Academy |

·

FBI_HQ-00041

(Rev. by scs on 04/17/2013)

| | |
|---|---|
| NAACP | National Association for the Advancement of Colored People |
| NJTTF | National Joint Terrorism Task Force |
| NPR | National Program Review |
| NSA | National Security Agency |
| NSB | National Security Branch |
| NSL | National Security Letter |
| NSLB | National Security Law Branch |
| NSTL | National Security Threat List |
| NTPs | National Threat Priorities |
| OC | Organized Crime |
| OCP | Organized Crime Program |
| OCA | Office of Congressional Affairs |
| OCDETF | Organized Crime Drug Enforcement Task Force |
| OCKO | Office of the Chief Knowledge Officer |
| OEEOA | Office of Equal Employment Opportunity Affairs |
| OGA | Other Government Agency |
| OGC | Office of the General Counsel |
| OIA | Otherwise Illegal Activity |
| OIC | Office of Integrity and Compliance |
| OIG | Office of the Inspector General |
| OLEC | Office of Law Enforcement Coordination |
| OPA | Office of Public Affairs |
| OPR | FBI - Office of Professional Responsibility |
| OTD | Operational Technology Division |
| PAL | Prioritized Action List |
| PC | Public Corruption |
| PCOR | Program Coordinator |
| PCP | Public Corruption Program |
| PFI | Principal Firearms Instructor |
| PI | Preliminary Investigation |
| PIOB | Potential Intelligence Oversight Board |
| PM | Program Manager |
| PMA | Property Management Applications |
| QSSR | Quarterly Supervisory Source Report |
| RA | Resident Agency |
| RCFL | Regional Computer Forensics Laboratory |
| RFI | Request For Information |
| RIP | Recruitment in Place |
| RMA | Resource Management and Allocation |
| RMD | Records Management Division |
| RPO | Resource Planning Office |
| RO | Reports Officer |
| SA | Special Agent |
| SABT | Special Agent Bomb Technician |
| SAC | Special Agent in Charge |

(Rev. by scs on 04/17/2013)

| | |
|---|---|
| SAPR | Semi-Annual Program Review |
| SC | Section Chief |
| SCI | Sensitive Compartmented Information |
| SCIF | Sensitive Compartmented Information Facility |
| SecD | Security Division |
| SES | Senior Executive Service |
| SIA | Supervisory Intelligence Analyst |
| SIOC | Strategic Information and Operations Center |
| SIR | Situational Information Report |
| SME | Subject Matter Expert |
| SMS | Strategy Management System |
| SOS | Staff Operations Specialist |
| SPS | Strategy Performance Session |
| SSA | Supervisory Special Agent |
| SSIA | Senior Supervisory Intelligence Analyst |
| SSRA | Supervisory Senior Resident Agent |
| SSTF | Safe Streets Task Force |
| STTF | Safe Trails Task Force |
| SWAT | Special Weapons and Tactics |
| TD | Training Division |
| TDY | Temporary Duty |
| TF | Task Force |
| TFA | Task Force Agent |
| TFO | Task Force Officer |
| TMS | Threat Mitigation Strategy |
| TMT | Threat Mitigation Team |
| TOCT | Transnational Organized Crime Threat |
| TOCTP | Transnational Organized Crime Threat Program |
| TPD | Third Party Draft |
| TRP | Threat Review and Prioritization |
| TSC | Terrorist Screening Center |
| TSL | Target Staffing Level |
| TURK | Time Utilization Record Keeping |
| UC | Unit Chief |
| UCE | Undercover Employee |
| UCO | Undercover Operation |
| UDP | Undisclosed Participation |
| UIA | Unauthorized Illegal Activity |
| U.S. | United States |
| USA | United States Attorney |
| USAO | United States Attorney's Office |
| USIC | United States Intelligence Community |
| USMS | United States Marshals Service |
| VC | Violent Crime |
| VCAC | Violent Crimes Against Children |
| VCP | Violent Crimes Program |

(Rev. by scs on 04/17/2013)

| | |
|---|---|
| VCT | Violent Criminal Threat |
| VCTF | Violent Crimes Task Force |
| WCC | White Collar Crime |
| WCCP | White Collar Crime Program |
| WG | Working Group |
| WMD | Weapons of Mass Destruction |
| WMDD | Weapons of Mass Destruction Directorate |
| WMDP | Weapons of Mass Destruction Program |

**Attachment C:** Audit Questions     UNCLASSIFIED//FOUO

TRACKING ID:

## GENERAL INFORMATION

Classification:

Charged Out To:

Charged Out On:

Storage Location:

HAZMAT:

Special Handling:

## AUDIT QUESTIONS (Begin Here)

1) AIIP's Name:

2) Do you have the evidence item? (Yes/No):

    2a) If NO, why not?
       (Select One)

| | |
|---|---|
| | Disposed of. |
| | Charged out to FBI LAB. |
| | Charged out to another agency/department. |
| | Cannot be found. |
| | Other - identify the reason in the COMMENTS Section at bottom of form. |

3) Do you have the necessary records to audit this evidence item?

    3a) If NO, and Question 2 is YES, identify the issue in the COMMENTS Section at bottom of form.

## INSTRUCTIONS

If the answer to question 2 or 3 above is YES, then you must review the below listed items and identify any errors (USE ANY COLOR PEN, EXCEPT BLACK).

NOTES:    **1) Misspelled words, incorrect punctuation marks, or extra spaces should NOT be corrected.**

          2) If the entry is NOT correct, enter the correction in the space provided.

Examples:  1) If an Item was entered into Sentinel as 1B--25 and the correct Item is 1B25, the Sentinel entry is considered correct but it contains an extra punctuation mark. In this case, you would check the box to indicate the Sentinel entry is correct. Likewise, if dollar value is 2.10 and Sentinel says 2.1 the entry is

           2) If an Item was entered into Sentinel as 1D--25 and the correct Item is 1B25, the Sentinel record is NOT correct. The D represents an ELSUR item and the B represents a general evidence item. The D is not considered a misspelling, but rather a substantial error that must be corrected. In this case, you

## EVIDENCE DETAILS

| | SENTINEL SAYS... | CORRECT INFORMATION... |
|---|---|---|
| CASE ID: | | |
| Item (1B): | | |
| Holding Office: | | |
| Barcode: | | |
| Description: | | |
| Corrected Desc: | | |

**TRACKING ID:** [　　　　　　　]   UNCLASSIFIED//FOUO

## EVIDENCE DETAILS (continued)

|  | SENTINEL SAYS... | CORRECT INFORMATION... |
|---|---|---|
| Collected On Date: | | |
| CATS ID #: | | |
| FBI Seizuer #: | | |

| EVIDENCE TYPE: | | | CART | | FIREARMS |
|---|---|---|---|---|---|
| | | | DRUGS | | GENERAL |
| | | | ELSUR | | VALUABLES |

## VALUABLES INFORMATION

| VALUABLE TYPE: | | ART_ANTIQUES |
|---|---|---|
| | | CASH |
| | | CHECKS |
| | | EVIDENCE_PURCHASE_MONEY |
| | | JEWELRY |
| | | NEGOTIABLE |
| | | OTHER [　　　　　　] |

| If CHECKS, Check Made Payable To? | | | USMS |
|---|---|---|---|
| | | | FBI |
| | | | OTHER |

| If CASH, Confirmed Counterfeit (Yes/No)? | | |
|---|---|---|
| If CASH, Dye Pack (Yes/No)? | | |

| DOLLAR VALUE: | | |
|---|---|---|
| Valuation Method: | | AGENT_STATED_VALUE |
| | | APPRAISED |
| | | RECEIPT_TAGGED |
| If Appraised, Appraised Date: | | |

## DRUG INFORMATION

| Lab Confirmed it was a Drug? | | CONFIRMED_FALSE |
|---|---|---|
| | | CONFIRMED_TRUE |
| | | UNCONFIRMED |
| | | HAS NOT BEEN SENT TO THE LAB |
| | | DON'T KNOW IF IT WAS SENT TO LAB |

Drug Lab Results:

| Drug Lab Analysis Date: | | | |
|---|---|---|---|
| Confirmed Drug Type: | | COCAINE | | ECSTASY |
| | | EPHEDRINE_POWDER | |
| | | HYDROCODONE | | GBH |
| | | MARIJUANA | | HEROIN |
| | | METHAMPHETAMINE | |
| | | OXYCONTIN | | PCP |
| | | PRESCRIPTION | |
| | | PRECURSOR_CHEMICALS | |
| | | PSEUDOEPHEDRINE_PILLS | |
| | | STEROIDS | |
| | | OTHER [　　　　　] | |

TRACKING ID: [ ] UNCLASSIFIED//FOUO

**DRUG INFORMATION (continued)**

| | SENTINEL SAYS... | CORRECT INFORMATION... |
|---|---|---|
| Drug Lab Results: | | |
| Lab Sample Size: | | ALL |
| | | SAMPLE |
| | | |
| Lab Weight: | | |
| Lab Units: | | GRAMS |
| | | KILOGRAMS |
| | | LITERS |
| | | MILLIGRAMS |
| | | MILLILITERS |
| | | OUNCES |
| | | POUNDS |
| | | TRACE |
| | | UNITS |

**FIREARMS INFORMATION**

| | SENTINEL | CORRECT |
|---|---|---|
| FIREARM TYPE: | | WEAPON |
| | | OTHER |

Does this item contain a silencer (Yes/No)? [ ]
Does the silencer have its own 1B and Barcode (Yes, No, N/A)? [ ]
Does this item have a firearm and ammunition packaged together (Yes/No)? [ ]
Does this item have multiple firearms packaged together (Yes/No)? [ ]
Were all the firearms associated with this item rendered safe (Yes, No, N/A)? [ ]

If Firearm Type = Weapon:

| | | |
|---|---|---|
| MAKE: | | |
| MODEL: | | |
| Serial #: | | |
| Made Safe By: | | |

**COMMENTS**